## IMPROVEMENTS MADE BY MISTAKE ON THE LOT OF ANOTHER.

Common Pleas Court of Hamilton County.

JOHN A. RYAN ET AL. v. THE CINCINNATI MODEL HOMES CO.

Decided, September, 1925.

*Mistaken Boundary—Results in Improvement being Made in Part on the Lot of Another—Application of the Maxim that he who asks Equity must do Equity.*

Where one acting innocently in good faith and under a mistake as to his boundary line makes permanent improvements upon the property of another, the owner of the ground thus mistakenly occupied, upon seeking relief in a court of equity, will be required to do equity by accepting the value of his land unimproved with a reasonable rental for the time occupied, or pay for the improvements which have been erected thereon.

*Eckert, Cordes & Raidt,* for plaintiffs.

*Murray Seasongood* and *Robert P. Goldman,* for defendant.

DARBY, J.

The plaintiffs claim to be the owners of Lot 85 in Barton's Subdivision, which fronts 50 feet on Browning Avenue, Cincinnati; that the defendant has rented the structures on said lot and collected the rents therefrom since their erection, without permission of the plaintiffs; that the defendant has no

title to said lot and that it threatens to continue the collection of the rents unless restrained by the court.

In a second cause of action the plaintiffs set forth that the defendant has been in possession of the structures located on the premises and has received the rents and profits thereof from April, 1918, to the filing of the suit in 1924, whereby plaintiffs have been damaged in the sum of $15,000.

The prayer of the petition is

"for the possession of the structures on said above mentioned premises, for an accounting of the rents collected to this time, and for an injunction restraining the defendant from collecting further rents from the tenants of said buildings and that upon a hearing thereof said injunction may be made permanent, and for damages in the sum of fifteen thousand ($15,000) dollars, and for such other relief to which they may be entitled."

The substance of the answer is—

First, a denial of the wrongful acts complained of; and

Second, that in the year 1918 the defendant, in the *bona fide* belief that it owned the real estate described in plaintiffs' petition, built an apartment building, part of which innocently and by mistake, was placed upon the real estate descibed in the petition, and that ever since that time defendant has been in open, notorious and continued possession of the building thereon and has been collecting the rents; that upon the discovery of the true location of the building the defendant entered into negotiations with the plaintiffs and offered to pay plaintiffs the fair value of the land in its unimproved condition, or to accept from the plaintiffs the reasonable value of the permanent improvements alleged to be, erected on the land, which is said to be $15,000 or thereabouts.

A third defense in the answer sets forth that with the foregoing facts in mind the parties agreed to an arbitration and settlement of their rights by that method, and that the plaintiffs afterwards refused to carry out said agreement.

The prayer of the answer is that the plaintiff's petition be dismissed, that they be ordered to carry out the agreement between the plaintiffs and the defendant, or in the alternative,

that the court fix the value of plaintiffs' land in its unimproved condition and of defendant's lasting and permanent improvements thereon, and that the plaintiffs be required to elect whether to sell their lot at the value fixed by the court, or to purchase defendant's buildings at the value fixed by the court, and for such other relief as the court may deem equitable and proper.

To this answer a reply was filed in the form of a general denial.

Soon after the filing of the petition a motion was made in this court for a restraining order, as asked in the petition, and for the appointment of a receiver to collect the rents of said improvement. This motion was overruled.

Upon the trial of the case and upon inquiry of the court as to whether this was an action to recover the buildings or for damages, and as to whether or not it was an equity case or law case, counsel for the plaintiffs announced that the prayer was improperly drawn and that the action was one for an accounting.

It is important to keep in mind that the case, as claimed by the plaintiff, is an equitable proceeding and that equitable remedies are sought.

The facts of the case are that the Emery estate owned two lots of 50 feet each immediately next to the lot described in the petition. Deeds were granted by the Emery estate to the defendant of the two lots referred to. When an examination was made of the physical condition of the lots supposed to be bought by the defendant, it was found that 100 feet of the ground was enclosed within two fences extending back from the street and that directly in the middle of the property was a large "For sale" sign. At the corners of the 100 foot lot so fenced were surveyor's stakes. Assuming that the property so enclosed was the 100 feet bought by the defendant, its contractor proceeded to erect these valuable improvements upon the property so enclosed. This was in the year 1918. How long the property had been so enclosed does not appear.

The plaintiffs did not live in the immediate neighborhood of the property, but the testimony shows that occasionally one of them, who acted as agent for all, visited the property, and

the inference is a reasonable one that he saw the improvements going up, but was himself under the mistaken belief that the plaintiffs owned the lot adjacent to said 100 feet. whereas in fact they owned fifty feet of the hundred.

It is clear that there was a mistake as to the property owned by both of the parties, and that in fact each believed when the improvements were made, that the 100 feet on which they were made was the property of the defendant, and so each believed that the 50 feet adjacent to said 100 feet was the property of the plaintiffs.

All parties continued in this belief until some time in the year 1923, when upon an examination made by one of the plaintiffs, it was discovered that part of the defendant's improvement was on the plaintiffs' lot.

It would serve no purpose to discuss the general principle of the law that buildings erected upon land become part of the land and belong to the owner of the land.

This is an equitable action, clearly shown to be such by the pleadings and the declarations in open court by counsel on both sides of the case. One of the maxims of equity which applies in a case of this kind is that "he who seeks equity must do equity."

Many authorities were submitted to the court on behalf of the respective parties; those on behalf of the plaintiff supporting the theory, as above set forth, that the buildings belong to the owners of the land, while those submitted on behalf of the defendant sustained the principle that where one, acting innocently and in good faith and in mistake as to his boundaries, makes permanent improvements on property of another, the latter, when he seeks the relief of a court of equity, will have it granted him only in case he does equity.

In 3 Pomeroy's Equity Jurisprudence, Third Edition, Section 1241, this principle is stated as follows:

"Such an equitable lien has not always been confined to cases in which a contract to reimburse could be implied at law. The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefitted as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mis-

take as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property, so that the real owner, *when he seeks the aid of equity* to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended."

Many cases are cited in the notes which support the text, and it would serve no good purpose to set them forth here.

In 3 Tiffany on Real Property, second edition, Section 662, the same principle is expressed as follows:

"As before stated, one who makes improvements on land in the mistaken belief that he is the owner thereof is given, by equity, a right to compensation for such improvements as against the true owner coming into equity to assert his rights, and this right to compensation has been regarded as enforcible as against the land itself."

In 1 Tiffany on Real Property, second edition, Section 274, this same principle is more fully stated as follows:

"Since the rule that erections or additions made by one who has no rights to land are fixtures, and therefore not removable by him, even though he made them in the belief that he was the owner of the land, is calculated to cause hardship to an innocent occupant of another's land, by giving the benefit of his labor and expenditures to the land owner, a system of compensation for improvements so made has been established by the courts, and, in most states, by express legislation.

"A court of equity will, on the principle that he who seeks equity must do equity, refuse its assistance to the rightful owner of and as against an occupant thereof unless he makes compensation for permanent and beneficial improvements, made by the latter without notice of the defect in his title. Occasionally equity has intervened in favor of the innocent occupant of land to allow compensation to him upon a bill filed by him against the true owner for the purpose, but by some courts relief of this character is accorded only in a proceeding instituted by the true owner, as an incident to the relef given him. The equitable practice of granting compensation in favor of an innocent occupant of land has frequently been adopted by courts of law to the extent of allowing the value of the improvements to be set off against the claim of the owner for *mesne* profits."

In *McKelway* v. *Armour et al.* 10 New Jersey Equity Reports, page 115, the principle involved is laid down as follows:

"Complainant erected a valuable dwelling house, by mistake. on the land of defendant; defendant lived in the vicinity, saw complainant progressing, from day to day, with the im provements, and admitted that he did not suspect the erections to be upon his lot until some time after their actual erection. when, by actual measurement, to his surprise, he discovered the mistake. The court relieved the complainant, putting the defendant to as little inconvenience as possible."

The court in its decision says on page 118:—

"I have concluded, therefore, to offer Armour (the owner), the privilege of taking the improvements at a value to be ascertained upon equitable principles by a master; or, if he prefers it, to order a reference to a master to ascertain the value of the lot, and to decree a release to the complainant upon his paying the valuation.   *    *    *    Should he decline selecting either of them within the time limited. I shall order a decree to the following effect: that Redmond convey to Armour lot No. 32 free and clear of all encumbrances. and that Armour release to complainant lot No. 34. As between the complainant and Armour, this will be just and equitable. for it appears by the evidence, that lot 32 is more valuable than lot 34."

In *Preston* v. *Brown*, 35 O. S., 18, while the facts in the case are not identical with the instant case. expressions of the court support the general principle stated in the authorities hereinbefore set forth.

The court is of the opinion, that the equities of the case are with the defendant and that the plaintiffs are entitled to the value of their land unimproved, with a reasonable rental for its use while defendant has been in possession, and the plaintiffs should either convey their land upon such consideration to the defendant. or should pay the defendant the value of the improvements. made upon such lot.

The technical objections to the pleadings were all considered by another member of this court, and by him passed upon, and no reason is shown why the ruling so made should be disturbed.

As to the defense that the parties entered into an agreement of arbitration, the court does not find it necessary to pass upon that question, nor the enforcibility of such an agreement.